# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| **DREUX BARRA** | **CASE NO. 6:18-CV-01162** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **RICKEY BOUDREAUX, ET AL.** | **MAGISTRATE JUDGE WHITEHURST** |

## <u>MEMORANDUM RULING</u>

Before the Court is a Motion for Dismissal Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the City of Youngsville, Ricky Boudreaux, individually and in his official capacity as Chief of Police for the City of Youngsville, Ken Ritter, individually and in his official capacity as Mayor of the City of Youngsville, Nathan Merithew, individually and in his official capacity as a police officer for the City of Youngsville, and AmGUARD Insurance Company ("Amguard") (collectively, "Defendants"). [Doc. No. 25] Defendants assert that Barra has not stated any valid claims, and request dismissal of Barra's Complaint, as well as attorney's fees and costs. [*Id.*] For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART, and Barra is GRANTED leave to amend his Complaint.

## I.
### BACKGROUND

This suit arises out of Plaintiff Dreux Barra's arrest for criminal mischief after Youngsville police received reports that Barra trespassed upon and flew an aerial "drone" over a property development that Barra had publicly opposed. Barra owns a residence in the Oak Shadows Subdivision ("Oak Shadows") of Youngsville, Louisiana. Starting in May 2016, he openly and repeatedly expressed opposition to the approval and development of an adjacent recreational

vehicle ("RV") park named Acadian Oasis.[1]  [Doc. No. 1 at ¶¶ 10-11]  Barra appeared at Youngsville City Council meetings, spoke personally with Youngsville Mayor Ken Ritter, and sent letters to the Mayor and City Council opposing the development.  [*Id.* at ¶¶ 11-19]  The City of Youngsville ultimately granted John Trahan (who is not a party to this matter) a permit to develop Acadian Oasis in or around July 2016.  Barra notified the City Council by email in April 2017 that Trahan was not complying with construction requirements and "had no intention of following any of the ordinance [regulating such developments]."  [*Id.* at ¶¶ 20]  Barra alleges that over the next several months, Youngsville Police, including Chief of Police Rickey Boudreaux, came to his home multiple times, questioned him, and accused him of trespassing on Trahan's property, dumping spoiled seafood on property near Acadian Oasis, and flying a drone over Acadian Oasis in order to harass Trahan and his development.  [*Id.* at ¶¶ 21-27]  The trespass complaint stemmed from Barra's allegation that the roads on the Acadian Oasis property were constructed with two inches of asphalt instead of the four inches required by law, which suggests that Barra entered the property without permission to measure the asphalt on the roads.  [Doc. No. 1 at ¶ 20]

On or about September 7, 2017, Officer Nathan Merithew arrested Barra and seized a drone and memory card that belonged to him.  [*Id.* at ¶ 28]  Barra alleges that his arrest and the seizure of his property were without legal basis. He also alleges that, following this incident, Youngsville Police regularly surveilled him from Acadian Oasis' property.  [*Id.* at ¶¶ 29-31]  Barra states that in November of 2017, the District Attorney for the 15th Judicial District declined to prosecute Barra for any charges, but that Youngsville Police refused to return his seized property for several months, and refused to release public records to Barra related to the police investigation of his

_____

[1] The Complaint names the development in question as "Acadiana Oasis," however, the park is properly referred to as "Acadian Oasis."

activity.  [*Id.* at ¶¶ 32-35]  Barra alleges that another Youngsville officer came to his home on February 28, 2018, and reported another complaint from Trahan accusing Barra of flying a drone over Acadian Oasis property.  [*Id.* at ¶ 36]

Barra filed this section 1983 Complaint with the Court on September 6, 2018, alleging violations of his First and Fourth Amendment rights under the United States Constitution, asserting a state law claim for the violation of his rights under Article XII § 3 of the Louisiana Constitution, and seeking compensatory damages, punitive damages, attorney's fees, and costs.  [Doc. No. 1] Barra named Officer Nathan Merithew, Chief of Police Ricky Boudreaux, Mayor Ken Ritter, the City of Youngsville and Amguard[2] as defendants.  [*Id.*]  Defendants now seek dismissal of Barra's claims.

## II.
### STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."  *Id.* at 161-62. When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a

---

[2] The Complaint names Atlantic Specialty Insurance Company ("Atlantic") as the entity that provided insurance to the Youngsville defendants during the time period covered by the Complaint.  [Doc. No. 1 at 3] Plaintiff was given leave to amend his Complaint to replace Atlantic with Berkshire Hathaway Specialty Insurance Company [Doc. No. 7], and again to identify Amguard as the proper insurer.  [Doc. No. 17]

formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted). Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, (2009) *(*citing *Twombly,* 550 U.S. at 555). In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

## III.
### ANALYSIS

### A.  Unlawful Arrest

Defendants argue that Barra has failed to state a claim for unlawful arrest under 28 U.S.C. § 1983. [Doc. No. 25-1 at 10-12] "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) (citing 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). To state a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged violation was

committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). Barra alleges that his arrest violated the Fourth Amendment to the United States Constitution.

The Fourth Amendment prohibits the unreasonable search and seizure of persons and property. U.S. Const. Amend. IV. An officer may conduct a warrantless arrest if that arrest is supported by probable cause. *See Atwater v. City of Lago Vista*, 532 U.S. 318 (2001).[3] Probable cause exists when the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *D.C. v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 586 (2018). A showing of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal citations and quotations omitted). Accordingly, because "probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." *Id.*

Here, Barra contends that Merithew lacked probable cause to arrest him. [Doc. No. 27 at 13] In this regard, the Complaint states that Merithew went to Barra's residence on September 7, 2017, questioned Barra about complaints that he had flown a drone over Acadian Oasis property, and then arrested him and seized his drone. [Doc. No. 1 at ¶ 28] Merithew arrested Barra for "criminal mischief" under section 14:59 of the Louisiana Revised Statutes. This provision provides that criminal mischief includes:

> Tampering with any property of another, without the consent of the owner, with the intent to interfere with the free enjoyment of any rights of anyone thereto, or with the intent to deprive anyone entitled thereto of the full use of the property.

---

[3] There is no allegation that a warrant was issued.

La. Stat. Ann. § 14:59.  Prior to Barra's September 7th arrest, Boudreaux and other Youngsville

officers had visited Barra at least two times (on April 4 and May 21, 2017) and warned him against

harassing the developer of Acadian Oasis by flying drones over the property.  [Doc. No. at ¶¶ 21-

23, 27]  On one of these occasions, defendant Boudreaux warned Barra about trespassing on

Acadian Oasis property.  [*Id*.at ¶ 21]  Barra had publicly complained that the property's roads were

constructed with two inches of asphalt instead of the required four inches of asphalt.  [*Id*. at ¶ 20]

Defendants contend that Merithew had probable cause to arrest Barra for criminal mischief

based on Barra's own allegations. According to Defendants:

> The facts of this case, viewed from the standpoint of an objectively reasonable
> police officer, are sufficient to warrant the belief that Barra had or was committing
> a criminal mischief.  Barra admits that he was unhappy that the City allowed Trahan
> to develop the RV park directly behind his home.  He admits he notified the city
> council that the road surface that Trahan poured was two inches shy of that required
> by the city ordinance, thus implying that he trespassed onto Trahan's property in
> order to measure the concrete.  Moreover, Barra admits that he owns a drone with
> an attached memory card device.  Barra also admits that Youngsville police offers
> were dispatched to his home on numerous occasions to investigate complaints that
> he was trespassing on Trahan's property, dumping trash onto the field adjacent to
> the property, and flying his drone over the property, despite being warned by the
> police to stop.

[Doc. No. 25-1 at 8]  Barra responds in his opposition brief that he did not "intentionally tamper

with any property," and that he "had absolutely no intent to interfere with the free enjoyment of

any rights thereto" or to "deprive anyone entitled thereto of the full use of the property." [Doc. 27

at 9] The Complaint, however, merely describes the September 7th arrest and Barra's prior

encounters with police, and then states in a conclusory fashion that "Nathan Merithew detained

and/or arrested Dreux Barra with no lawful basis." [Doc. No. 1 at ¶ 29]

Barra's unlawful arrest allegations fail to state a claim because they do not include facts

supporting his conclusory statement that the arrest was "unlawful," and the Complaint's

description of the arrest and Barra's prior encounters with the police do not demonstrate a lack of

probable cause. Unlawful arrest claims "require[ ] an inquiry into the specific situation confronting the public officials." *Torns v. City of Jackson*, 622 Fed.Appx. 414, 417 (5th Cir. 2015) (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)). Accordingly, a plaintiff asserting an unlawful arrest claim "must specifically plead facts that show that the officers lacked probable cause." *Id.* Barra has not pled these facts in his complaint. Barra's allegations do not demonstrate that Merithew was objectively unreasonable in concluding that there was a "probability or substantial chance" that Barra had engaged in criminal activity given the allegations that (1) Barra opposed the Acadian Oasis development, (2) Youngsville officers warned Barra multiple times not to harass Acadian Oasis by flying drones over the property, and (3) Barra reportedly trespassed on Acadian Oasis property to inspect the roads on the property. In sum, the bare, conclusory statements in the Complaint that the arrest was "unlawful" or "without probable cause" are not sufficient to state a claim for unlawful arrest. Accordingly, the Court GRANTS Defendants' Motion to Dismiss with respect to Barra's unlawful arrest claim. However, as explained further below, the Court will grant Barra leave to replead this claim.

## B. Unlawful Seizure of Property

Defendants argue that Barra has not stated a claim for unlawful seizure of property under the Fourth Amendment because probable cause existed for the seizure of Barra's drone and memory card. [Doc. No. 25-1 at 13] As with seizures of persons, searches and seizures of property must be reasonable in order to comport with the requirements of the Fourth Amendment. *Riley v. California*, 573 U.S. 373, 381–82 (2014). "Although as a general matter, warrantless searches 'are per se unreasonable under the Fourth Amendment,' there are 'a few specifically established and well-delineated exceptions' to that general rule." *City of Ontario v. Quon*, 560 U.S. 746, 760

(2010) (quoting *Katz v. U.S.*, 389 U.S. 347, 357 (1967)). Warrantless searches and seizures may be constitutional when performed incident to a lawful arrest. *See Riley*, 573 U.S. at 382-85.

Here, Defendants contend that there was probable cause for Officer Merithew's seizure of the drone and memory card. A police officer may seize property "that is evidence of a possible crime, fruit of a crime, or instrumentalities of a crime" incident to a lawful arrest. *Lewis v. Locicero*, No. CV 15-00129, 2017 WL 3928117, at *5 (M.D. La. Sept. 7, 2017) (citing *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 296 (1967)). As explained previously, Barra's allegations do not demonstrate that Merithew lacked probable cause to arrest Barra. Moreover, the drone was "evidence of a possible crime" because Merithew's criminal inquiry and Barra's arrest stemmed from a complaint that Barra was flying the drone over Acadian Oasis property to harass the property developer. Accordingly, the allegations in the Complaint appear to support Defendants' contention that the drone and memory card were seized incident to a lawful arrest because Barra has not alleged facts supporting his contention that the arrest was unlawful. The Court, therefore, GRANTS the motion to dismiss with respect to Barra's unlawful seizure claim. However, because the Court is granting Barra leave to amend the Complaint with respect to his unlawful arrest claim, the Court will grant leave to allow Barra to replead his unlawful seizure claim.

## C. Abuse of Process

Barra's complaint appears to assert a separate claim for "abuse of process" against Defendants based on his arrest and prosecution. Defendants argue that Barra fails to plead facts supporting a claim that Officer Merithew knew Barra was innocent when he was arrested, or that any defendant abused the criminal process to justify unlawful actions. [Doc. No. 25-1 at 13-14] A claim for abuse of process falls under the rubric of "common law torts which protect the interest

in freedom from unjustified litigation," including "malicious prosecution" and "wrongful civil proceedings." *Sisk v. Levings*, 868 F.2d 159, 161 (5th Cir. 1989) (citing *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187, 1188 n. 1 (5th Cir.1978)). Like malicious prosecution, however, "the common law tort of misuse of legal procedure, without more, does not rise to the level of constitutional wrong remedied by Section 1983." *Muirhead*, 581 F.2d at 1189. Rather, section 1983 claims based on allegations of abuse of process must be explicitly tied to an established constitutional right. *Cevallos v. Silva*, 541 F. App'x 390, 394 (5th Cir. 2013) (citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003)). Barra explicitly ties his abuse of process claim to allegations that Defendants violated his Fourth Amendment rights by conducting an unlawful arrest and seizing his drone. [Doc. No. 1 at ¶¶ 67-69] He also appears to tie this claim to his allegation that the arrest and seizure were done in retaliation for exercising his First Amendment right to oppose Acadian Oasis' development permit at City Council meetings: "[Defendants] charged Plaintiff with a crime of which they know he is innocent and they only did so to justify their actions and to punish him for his lawful conduct." [*Id.* at ¶ 69] As the Court has previously explained, Barra's unlawful arrest and seizure allegations are insufficient because he fails to allege facts (as opposed to conclusory statements) showing that Merithew lacked probable cause to arrest him.

With respect to Barra's First Amendment retaliation claims, he does not allege any facts supporting a plausible claim that Officer Merithew's decision to arrest Barra was substantially motivated by Barra's advocacy in City Council meetings. Barra merely alleges that Defendants Boudreaux and Ritter attended the City Council meetings where Barra opposed the development permit for Acadian Oasis. [Doc. No. 1 at ¶¶ 13-19] There are no allegations that any of the Defendants took any actions at those meetings suggesting a threat or other attempt to retaliate

against Barra for speaking out against the development permit. The next encounter between Barra and Defendants was almost nine months after the approval Acadian Oasis' permit. During that encounter at Barra's home, Defendant Boudreaux questioned Barra about trespassing on Acadian Oasis' property. [*Id.* at ¶ 21] Subsequent visits to Barra involved complaints about Barra flying drones over Acadian Oasis and dumping trash near the property. Barra's September 2017 arrest occurred over one year after the City Council meetings involving the development permit. Each of these encounters – and Barra's ultimate arrest – stemmed from complaints about Barra's actions after the permit approval, and the Complaint does not include any facts showing that Barra's advocacy before the City Council in 2016 was a motivating factor for his September 2017 arrest. As explained below, these facts simply do not connect all of the dots required to state a plausible claim of retaliation. Because Barra has not stated a claim for unlawful arrest or retaliation, he cannot state a claim for abuse of process grounded on these alleged constitutional violations.

Because Barra has failed to state a federal claim for abuse of process, the Motion is GRANTED as to that claim. The Court, however, will grant Barra leave to amend the Complaint to address these deficiencies.[4]

## D. Malicious Prosecution

Barra also asserts a claim of malicious prosecution under the Fourth Amendment. [Doc. No. 1 at 16-17] Defendants argue that he has not stated a claim for malicious prosecution because the United States Constitution does not include the right to be free from malicious prosecution. [Doc. No. 25-1 at 14] While "Count Five" of the Complaint specifically asserts a claim of

---

[4] Both Barra's Complaint and his Memorandum in Opposition to Defendants' Motion to Dismiss refer only to claims of abuse of process under section 1983 and the Fourth Amendment, and neither makes reference to any analogous claim under Louisiana law. Therefore, the court does not construe the Complaint to be asserting a claim for abuse of process under Louisiana law. Compare this with Barra's arguments regarding malicious prosecution under state law, discussed below.

malicious prosecution under "42 U.S.C. section 1983 and the Fourth Amendment" [Doc. No. 1 at 16], Barra argues in his opposition to the motion that he has alleged all the elements of a claim for malicious prosecution under Louisiana law. [Doc. 27 at 14-15] Reading the pleadings liberally, the Court construes the Complaint as asserting a claim for malicious prosecution under section 1983 and, in the alternative, under Louisiana law.

With respect to Barra's section 1983 claim, the Fifth Circuit has never recognized an independent federal claim for malicious prosecution. *See Castlellano v. Fragazo*, 352 F.3d 939, 942 (5th Cir. 2003) (holding that "malicious prosecution standing alone is no violation of the United States Constitution."). Rather, malicious prosecution allegations must be tethered to a specific constitutional right that has been allegedly violated by a defendant's conduct. *Id.* As with his abuse of process claim, Barra appears to tether this claim to allegations that Defendants violated his Fourth Amendment rights by conducting an unlawful arrest and seizing his drone. [Doc. No. 1 at ¶ 72] Accordingly, because Barra has not stated a claim for unlawful arrest or retaliation, he cannot state a claim for malicious prosecution based on these alleged constitutional violations. Because Barra has failed to state a federal claim for malicious prosecution, the Motion is GRANTED as to that claim. The Court, however, will grant Barra leave to amend his Complaint to address these deficiencies.

Under Louisiana law, a malicious prosecution claim requires proof of each of the following elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its *bona fide* termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages to the plaintiff. *Vidrine v. United States*, 846 F. Supp. 2d 550, 558–59 (W.D. La. 2011) (*citing Jones v. Soileau*, 448 So.2d 1268,

1271 (La.1984)). A "favorable termination" is a disposition where the court "passed on the merits of the charge in such circumstances as to suggest the innocence or non-liability of the malicious prosecution plaintiff." *Lemoine v. Wolfe*, 2014-1546 (La. 3/17/15), 168 So. 3d 362, 368. This includes the voluntary dismissal of a prosecution by a district attorney under Louisiana Code of Criminal Procedure Article 691 (a *nolle prosequi*) when the prosecution is not reinstated by the district attorney. *Id.* If all elements other than damages are established, damages are presumed. *Vidrine*, 846 F. Supp. 2d at 560.

The Complaint alleges that Barra was the defendant in a criminal proceeding initiated by the actions of one or multiple of the defendants, and that the proceeding was terminated in his favor prior to trial. [Doc. No. 1 at ¶¶ 28, 32] Under the applicable law, voluntary dismissal of a prosecution creates rebuttable presumptions of (1) malice and (2) a lack of probable cause, and the totality of these allegations and presumptions creates a presumption of damages. *Smith v. City Bank & Tr. Co.*, 2018-664 (La. App. 3 Cir. 5/1/19), 271 So. 3d 263, 267. Barra has therefore stated a claim for malicious prosecution under Louisiana law, and the motion is DENIED as to that claim.[5]

### E. Retaliation for Exercise of Right to Free Speech

Defendants argue that Barra has not stated a claim for retaliation against the exercise of his First Amendment rights because (1) Barra fails to identify a protected activity with which Defendants interfered, and (2) Barra does not allege that his arrest was substantially motivated by a desire to retaliate for any protected activity. [Doc. No. 25-1 at 15] Barra asserts that he has stated a claim for retaliation for the exercise of his First Amendment rights, and implies that the protected activity at issue was Barra's vocal opposition to the development of the proposed RV

---

[5] However, if Barra seeks to assert a malicious prosecution claim under state law, he must amend his Complaint to clearly show that he is asserting a malicious prosecution claim under state law.

park at City Council meetings and in communications with city officials. [Doc. No. 27 at 15; Doc. No. 1 at ¶¶ 11-21]

"To establish a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in constitutionally protected activity; (2) the defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the constitutionally protected conduct." *Cass v. City of Abilene*, 814 F.3d 721, 729 (5th Cir. 2016) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002)). A showing of probable cause to arrest the plaintiff will generally defeat a retaliatory arrest claim. *Nieves v. Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1727–28 (2019). However, there is an exception to this rule that applies "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* This exception addresses "a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Lozman v. City of Riviera Beach, Fla.,* ___ U.S. ___, 138 S. Ct. 1945, 1953 (2018).

Here, Barra alleges that Officer Merithew "under the direct supervision of Chief Rickey Boudreaux and at his behest, and in accordance with the policies of the City of Youngsville," arrested him without probable cause and in retaliation for engaging in constitutionally protected speech and expression. [Doc. No. 27 at ¶ 60-61] However, as explained above, the Complaint does not allege facts showing that Officer Merithew lacked probable cause to arrest him for criminal mischief. Nor does Barra allege facts showing "that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727.

The Complaint also does not include any facts supporting a plausible claim that Officer Merithew's decision to arrest Barra was substantially motivated by Barra's advocacy in City Council meetings. Barra alleges that, before arresting him and seizing his drone, Officer Merithew questioned Barra about reports that he had flown his drone over property belonging to Acadian Oasis [Doc. No. 1 at ¶ 28], and that this was not the first time that members of the Youngsville Police Department had discussed the drone with Barra. [Doc. No. 1 at ¶¶ 22-23, 27] Barra, however, alleges no facts (as opposed to conclusory statements) connecting his arrest to his advocacy at Youngsville City Council meetings. Indeed, the description of Barra's arrest in the Complaint suggests that Officer Merithew was responding to reports regarding Barra again flying his drone over Acadian Oasis. Moreover, according to the Complaint, Barra participated in City Council meetings from May 2016 through July 2016; Barra learned of the permit approval at the July 2016 meeting. However, Barra's arrest did not occur until September 2017, *more than a year after* Barra's public participation in the City Council meetings and the ultimate approval of the permit for Acadian Oasis. [Doc. No. 1 at ¶¶ 13-19, 28] The time period between Barra's participation in City Council meetings and his arrest further undermines the plausibility of Barra's claim that his arrest was substantially motivated by his advocacy against a permit for the Acadian Oasis development. Accordingly, Barra has failed to state a claim for retaliation, and the Motion is therefore GRANTED as to that claim. The Court, however, will grant Barra leave to amend his Complaint to address these deficiencies.

## F.  Qualified Immunity

Defendants also argue that Officer Merithew is entitled to qualified immunity for Barra's arrest and the seizure of Barra's drone. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*). Qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation. *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Because an early resolution of qualified immunity protects officials from unwarranted liability and "costly, time-consuming, and intrusive" pre-trial discovery, it may be decided on a motion to dismiss. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012); *Estate of Munoz by Ruelas v. Ford*, 402 F. Supp. 3d 344, 350 (E.D. Tex. 2019).

Whether an officer is entitled to qualified immunity turns on a two-prong inquiry. First, do the facts alleged or shown by the plaintiff demonstrate the violation of a constitutional right? *Harlow*, 457 U.S. at 818. Second, was that right "clearly established" at the time of the defendant's alleged misconduct? *Id.* "The constitutional right must be sufficiently clear to put a reasonable officer on notice that certain conduct violates that right." *Sanchez v. Swyden*, 139 F.3d 464, 466 (5th Cir. 1998). An officer's conduct that violates the plaintiff's constitutional rights does not preclude the qualified immunity defense if the officer's conduct was objectively reasonable. *Id.* at 467. The "objective reasonableness" standard ensures that officers were on notice that their conduct was unlawful before they are subjected to a lawsuit. *Pearson*, 555 U.S. at 244. Whether the actions of an officer are objectively reasonable turns on the circumstances confronting the officer as well as "clearly established law" in effect at the time of the officer's conduct. *Id.* at 243. "The subjective intent of the officer is irrelevant, and the officer's knowledge of the law need not

rise to the level of a 'constitutional scholar.' " *Sanchez*, 139 F.3d at 467 (citing *Harlow*, 457 U.S. at 815–17). A court's analysis of qualified immunity may start with either step of the inquiry. *Gibson v. Kilpatrick*, 773 F.3d 661, 666 (5th Cir. 2014).

Defendants argue that, assuming *arguendo*, if Merithew lacked probable cause to arrest Barra and seize his drone, Merithew is entitled to qualified immunity because he had a reasonable belief that there was probable cause to arrest Barra for flying his drone over Acadian Oasis' property after being instructed not to do so. [Doc No. 25-1 at 12] Because Barra's opposition brief does not address qualified immunity with respect to Merithew, the Court will turn to the allegations in the Complaint. As explained above, Barra has not pled facts demonstrating that Merithew lacked probable cause for the arrest and seizure and, therefore, cannot show that Merithew violated a constitutional right. Accordingly, Barra cannot satisfy the first prong of the qualified immunity inquiry based on the Complaint alone.

With respect to the second prong of the inquiry – whether the right was clearly established – "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. 635 at 640. Courts generally address the "clearly established" prong by looking at cases with analogous facts. In so doing, courts must not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather, the inquiry must focus on whether a right is clearly established as to *the specific facts of the case*." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (emphasis added); *see also Kinney*, 367 F.3d at 350. This means that the inquiry here is not whether the general requirement of probable cause for a warrantless arrest is "clearly established." Rather, the inquiry is whether it was clearly established

that the Fourth Amendment prohibited Merithew's conduct "in the situation he confronted" based on controlling or persuasive authority from other cases. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). "Although a case directly on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Melton v. Phillips*, 875 F.3d 256, 265–66 (5th Cir. 2017) (quoting *Vincent*, 805 F.3d at 547). Based on the Complaint alone, the Court cannot conclude that Barra's arrest violated "clearly established" law based on these standards.

In sum, the Complaint does not allege facts that address either of the two prongs of the qualified immunity defense. However, when a qualified immunity defense is asserted in an answer or motion to dismiss, a court may, after considering the allegations in the complaint, allow a reply under Rule 7(a) of the Federal Rules of Civil Procedure that specifically addresses qualified immunity. *See Brown v. City of Houston*, 297 F. Supp. 3d 748, 771–75 (S.D. Tex. 2017). As explained below, the Court grants Barra leave to file an amended complaint to cure the pleading deficiencies outlined in this ruling. If Barra seeks to challenge qualified immunity, he may incorporate his Rule 7(a) reply addressing qualified immunity into his amended complaint. Defendants' motion is DENIED with respect to the issue of qualified immunity, without prejudice to their ability to re-urge qualified immunity if Barra files an amended complaint and Rule 7(a) reply.

## G. Official Capacity Section 1983 Claims

Defendants argue that Barra's official capacity section 1983 claims against Defendants Ritter, Boudreaux, and Merithew should be dismissed as duplicative of his claims against the City of Youngsville, which is also a party to this suit. [Doc. No. 25-1 at 20-21] Barra argues that his official capacity claims against Chief Boudreaux should not be dismissed because the City of

Youngsville has a unique administrative structure which gives the Chief of Police certain powers that are not subject to oversight by the City of Youngsville or are in conflict with the City's policies, and asserts that additional discovery on the City's administrative structure is required. [Doc. No. 27 at 24]  Barra further contends that Boudreaux is liable in his official capacity under a theory of vicarious liability for claims against Officer Merithew.  [*Id*. at 24-25]  Barra also argues that his official capacity claims against Mayor Ritter should not be dismissed at this stage because Ritter has supervisory authority and is a policymaker for the City of Youngsville.  [*Id*. at 25]

Claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).  If a plaintiff can sue the governmental entity directly, he would not be prejudiced by dismissal of claims against an officer in his or her official capacity.  *See Kentucky v. Graham*, 473 U.S. 159 (1985).  When the governmental entity itself is a defendant, claims against employees of the entity in their official capacity are redundant, and therefore should be dismissed.  *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001). Because the City of Youngsville remains a party to this matter, the Motion is GRANTED as to Barra's section 1983 claims against Defendants Ritter, Boudreaux, and Merithew in their official capacities and the claims are DISMISSED WITH PREJUDICE.

## H.  Individual Capacity Section 1983 Claims against Chief Boudreaux and Mayor Ritter

Defendants seek dismissal of Barra's individual capacity section 1983 claims against Chief Boudreaux and Mayor Ritter.  As to Boudreaux, Defendants argue that the Complaint only makes conclusory allegations that Boudreaux failed to properly train, supervise, instigate, or discipline his subordinate officers, and in the alternative that Boudreaux is entitled to qualified immunity. [Doc. No. 25-1 at 17]  As to Ritter, Defendants assert that Barra does not specifically allege any

conduct by Ritter, nor does he identify any constitutional violations by Ritter. [*Id.*] Alternatively, Defendants argue Ritter is entitled to qualified immunity. [*Id.*]

Barra responds that he has stated a claim against Chief Boudreaux in his individual capacity because Boudreaux, as the policymaker for the Youngsville Police Department, "implemented unconstitutional policies that causally result in constitutional injury," with such policies including "failure to train, failure to discipline and failure to investigate." [Doc. No. 27 at 16] Barra further asserts that as to those policies, "[t]his issue is not ripe, is not before the court at this time," and Defendants' motion is an attempt to dismiss Barra's claims against Boudreaux "before they are even alleged."[6] [*Id.*](emphasis in original omitted). As to Ritter, Barra argues that the Complaint alleges Ritter was aware of Barra's opposition to Acadian Oasis, and that this fact supports Barra's claim that the defendants retaliated against him for his exercise of First Amendment rights. [Doc. No. 27 at 17-18]

In order to state a claim under section 1983 against a defendant in his individual capacity, a plaintiff must allege specific conduct on the part of the defendant giving rise to a constitutional violation. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Conclusory allegations are insufficient. *Id.* In order to prove a supervisory official is liable under section 1983 in his individual capacity, a plaintiff must prove that the official (1) affirmatively participated in the acts causing the constitutional deprivation or (2) implemented unconstitutional policies that causally led to Barra's injury. *Hauenstein v. Hilton*, 716 F. App'x 359, 360 (5th Cir. 2018). "To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the training procedures were inadequate, (2) that defendant was deliberately indifferent in adopting the training policy, and (3)

---

[6] While Barra here explicitly states that the unconstitutionality of policies implemented by Boudreaux is not at issue at this time, taken in context the court construes these statements to mean that Barra intends to conduct additional discovery regarding the relevant policies.

the inadequate training policy directly caused the violations in question." *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017). A plaintiff alleging inadequate training "must allege with specificity how a particular training program is defective." *Id.* at 345. A failure-to-supervise claim is evaluated in the same manner as a failure-to-train claim. *Id.* at n. 11.

### 1. Chief Ricky Boudreaux

Barra's complaint fails to state a section 1983 claim against Boudreaux in his individual capacity. The only factual allegations Barra offers regarding Boudreaux's conduct toward Barra are that Boudreaux was present at City Council meetings when Barra was also present [Doc. No. 1 at ¶¶ 14, 16], and that Boudreaux visited Barra's home and had a conversation with him in which Boudreaux relayed the complaint that Barra had trespassed on Acadian Oasis' property. [Doc. No. 1 at ¶ 21-24] Neither of these allegations supports the claim that Boudreaux affirmatively participated in a violation of Barra's rights, nor that Boudreaux implemented unconstitutional policies that led to a violation of Barra's rights.

Barra does detail allegations of Boudreaux's activity while employed by the Iberia Parish Sheriff's Office. [Doc. No. 1 at ¶¶ 38-47] However, he offers no facts beyond the allegation that Boudreaux established customs, patterns, and practices in the Youngsville Police Department that include excessive use of force, civil rights violations, harassment of citizens, "cover-up," and failure to investigate allegations of officer misconduct, similar to those in place in the Iberia Parish Sheriff's Office. [Doc. No. 1 at ¶ 48][7] Barra also alleges in a conclusory manner that when Merithew arrested Barra, seized his property, and falsely charged him with a crime, he did so "under the supervision of" and "at the behest" of Boudreaux. [Doc. No. 1 at ¶¶ 53, 60, 69, 72] These allegations are insufficient to support a claim that Boudreaux has any individual liability

---

[7] The Court further discusses these allegations in the discussion of Barra's *Monell* claim.

under section 1983 for violating Barra's rights, and therefore Defendants' motion as to such claim is GRANTED.[8]  The Court, however, grants Barra leave to amend the Complaint and to re-plead this claim.

### 2.  Mayor Ken Ritter

Barra's Complaint similarly fails to state a claim against Ritter under section 1983 in his individual capacity.  The only specific factual allegations in the Complaint as to Ritter are allegations that Ritter attended the City Council meetings when Barra advocated against Acadian Oasis [Doc. No. 1 at ¶¶ 13-16], and that Barra communicated with Ritter about his opposition to the development of Acadian Oaks.  [Doc. No. 1 at ¶ 18]  Neither of these allegations supports the claim that Ritter affirmatively participated in a violation of Barra's rights or implemented unconstitutional policies that led to a violation of Barra's rights.  Defendants' motion as to the section 1983 claims against Ritter in his individual capacity is GRANTED.[9]  The Court, however, grants Barra leave to amend the Complaint and to re-plead this claim.

## I.  Claim Against City of Youngsville

Defendants next challenge Barra's *Monell* claim against the City of Youngsville.  Barra alleges the City of Youngsville is liable under section 1983 because its policies were the driving force behind Officer Merithew arresting him, seizing his property, and charging him with a crime, all in violation of his constitutional rights.  [Doc. No. 1 at ¶¶ 51-89]  Barra alleges that the relevant "de facto unwritten" policies, practices, and/or customs include the failure by the City to

---

[8] Given the court's finding that Barra fails to state a claim against Chief Boudreaux, the question of his qualified immunity is not addressed. However, to the extent that Barra contests qualified immunity beyond the facts pled in the Complaint, he must include a Rule 7(a) reply in his amended complaint addressing this defense.
[9] Given the court's finding that Barra fails to state a claim against Mayor Ritter, the question of his qualified immunity is not addressed. However, to the extent that Barra contests qualified immunity beyond the facts pled in the Complaint, he must include a Rule 7(a) reply in his amended complaint addressing this defense.

adequately supervise, train, monitor, and discipline its police officers, and the failure to properly investigate citizen complaints of police misconduct. [Doc. No. 1 at ¶¶ 83-85] Barra also alleges that Youngsville has "explicit unconstitutional policies" which include detaining persons without probable cause of criminal wrongdoing, seizing property without any lawful basis, and retaliating against citizens for exercising their constitutionally protected rights. [Doc. No. 1 at ¶ 88]

A municipality such as the City of Youngsville may not be held liable under section 1983 for the violation of constitutional rights on a theory of vicarious liability. *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017). It may, however, be liable under *Monell* when allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To state a claim of liability under section 1983, a Plaintiff must allege facts that plausibly establish that (1) an official policy, (2) that was promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right. *Blanchard-Daigle v. Geers,* No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020). Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* A plaintiff alleging a practice so common and well-settled as to represent municipal policy must show a pattern of conduct that is specific and similar to the constitutional violation alleged by the plaintiff. *Hicks-Fields*, 860 F.3d at 810. In so doing, a plaintiff "must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

The parties dispute the proper pleading standard for Barra's *Monell* claim. Pointing to *Mack v. City of Abilene*, 461 F.3d 547, 556 (5th Cir. 2006) and *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011), Barra argues that he need only allege the existence of a policy or custom that led to a constitutional violation without any additional detail. Defendants argue that *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. at 678, require more. In *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Supreme Court held that *Monell* claims are not subject to a heightened pleading standard. *Leatherman*, however, was decided before *Twombly* and *Iqbal*, causing courts to grapple with effect of these two later cases on the pleading standard for a *Monell* claim. *See, e.g., Thomas*, 800 F. Supp. 2d at 843 (reconciling *Leatherman* and *Iqbal* ). The Fifth Circuit has since clarified that the pleading standards in *Twombly* and *Iqbal* apply to municipal liability claims and that the plaintiff must plead specific facts that give rise to a plausible claim for relief. *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281, 284–85 (5th Cir. 2020).

A case cited by Barra, *Thomas*, 800 F. Supp. 2d 826, provides a useful framework for applying this pleading standard. According to *Thomas*, a plaintiff is not required to "specifically state what the policy is, as the plaintiff will generally not have access to it." *Id.* at 844. However, the plaintiff must plead more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials." *Id.* at 845. The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged. *Id.* at 844. For example, "allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific

topic of the challenged policy or training inadequacy." *Id.* (footnotes omitted)  In *Thomas*, the court concluded that the plaintiff's "lengthy" allegations did not satisfy this pleading standard because they "consist[ed] only of a list of number of broadly-defined constitutional violations (for example, 'excessive force' and 'unlawful searches and seizures') followed by the assertion that there was a pattern of such violations, that there was a failure to train, or that the violations resulted from improper hiring." *Id.* at 845.

Here, Barra's *Monell* allegations fail to give the City of Youngsville adequate notice as to the basis of his claim. Although Barra is not required to plead specific factual detail as to any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the City of Youngsville that was the "motivating force" behind a constitutional violation, the Complaint never even identifies the specific official policies promulgated or adopted by the City that Barra is challenging except in general terms.  *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) ("... we have required a plaintiff seeking to impose liability on a municipality under section 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."). Instead, like the plaintiff in *Thomas*, Barra merely recites broadly-defined constitutional violations followed by the assertion that the violations resulted from the City's official policies or failure to train and supervise its officers. [Doc. No. 1 at ¶¶ 48, 83 – 86]

Barra's complaint also includes allegations regarding Chief Boudreaux's conduct when he was Patrol Commander with the Iberia Parish Sheriff's Office. Barra alleges that Boudreaux founded a unit (the "IMPACT" unit) that "quickly became known for its brutality amongst civilians and prisoners." [*Id.* at ¶ 40] He further alleges that Boudreaux "would take no action regarding investigating or disciplining … the alleged use of excessive force and civil rights violations." [*Id.* at ¶ 47]  Barra then concludes that Boudreaux "individually and in his official

capacity as the Chief of Police for the City of Youngsville and as the final policymaker for the staff of the Youngsville Police Department, established a similar custom, pattern and practice as the one which he enforced while employed with by the Iberia Parish Sheriff, which included excessive use of force, civil rights violations, harassment of citizens, cover-up and failure to investigate allegations of police officer misconduct." [*Id.* at ¶ 48]

These allegations are insufficient to show a "widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy" or to establish a failure to train or supervise. *Blanchard-Daigle,* 2020 WL 730586, at *2. First, the specific incidents detailed in the Complaint occurred while Boudreaux was employed by the Iberia Parish Sheriff's Office. Barra pleads no facts showing specific similar incidents while Boudreaux was allegedly the final policymaker for the City of Youngsville Police Department. Instead, Barra merely pleads in a conclusory fashion that Boudreaux "established a similar custom, pattern and practice" after joining the Youngsville Police Department. [Doc. No. 1 at ¶ 48] Second, the incidents that occurred when Boudreaux worked for the Sheriff's Office in New Iberia involve fundamentally different types of constitutional violations than those alleged in Barra's complaint. Specifically, the New Iberia incidents involved allegations of excessive force and brutality: "Rickey Boudreaux was present in the chapel on April 29, 2011 during the time prisoners were taken to that area of the Iberia Parish Jail to be beaten by officers," and Boudreaux "was provided video evidence of Marcus Robichaud, a prisoner at the Iberia Parish Jail, being brutally stacked by an officer and his canine while laying [sic] face down on the ground." [*Id.* at ¶¶ 43, 45] In contrast, the claims here involve allegations of unlawful arrest and seizure of property, malicious prosecution, and retaliation. There are no allegations of excessive force or brutality. *Hicks-Fields,*

860 F.3d at 810 (plaintiff must show a pattern of conduct that is **specific and similar to** the constitutional violation alleged by the plaintiff).

In sum, Barra has not stated a claim for *Monell* liability against the City of Youngsville. The motion to dismiss is therefore GRANTED. However, the Court will grant Barra leave to file an amended complaint and to replead his *Monell* claim.

## J. Claim Under Louisiana Constitution

Defendants next challenge Barra's public records claim under the Louisiana Constitution, contending that Barra's allegation that he was denied access to public records "for several days" does not state a claim for violation of his rights under Louisiana law. [Doc. No. 25-1 at 21-22] Barra asserts that he has properly stated a claim under the Louisiana constitution. [Doc. No. 27 at 27] Each person's right to examine public documents is enshrined in Article XII, § 3 of the Louisiana Constitution, and in the Public Records Law, La. Stat. Ann. § 44:31, *et seq.* Within five days of receipt of a request to access a public record – excluding weekends and legal holidays – the custodian of the record must either produce the record or provide the requesting person a written estimate of the time reasonably necessary for collection, redaction, examination, or review of the request. La. Stat. Ann. § 44:35(A). If neither the record nor a written estimate of the time necessary to produce the records is provided within five days, the person requesting access may institute proceedings for injunctive or declaratory relief, issuance of a writ of mandamus, and costs, fees, and damages. *Id.* Thus, the Public Records Law recognizes that some reasonable delay may be necessary to comply with records access requests. *Stevens v. St. Tammany Par. Gov't*, 2017-0959 (La. App. 1 Cir. 7/18/18), 264 So. 3d 456, 462, *reh'g denied* (Nov. 15, 2018), *writ denied*, 2018-2062 (La. 2/18/19), 265 So. 3d 773.

Barra fails to state a claim under the Louisiana Constitution's right to access public records. Barra initially alleges that the Youngsville Police Department refused to allow him to review public records related to the closed criminal investigation of him [Doc. No. 1 at ¶ 33], but later states that after an additional request he was provided with records to review. [Doc. No. 1 at ¶ 35] Barra describes his injury as having been "denied the right to examine public records for several days." [Doc. No. 1 at ¶ 91] As noted above, the law allows records custodians at least five days in which to provide either the requested records or a written estimate of the time it will take to answer the request. Barra does not indicate how long the delay was between his request and the production of the records he requested, nor whether he received an estimate of the time it would take to respond to his request, if that delay was longer than allowed by law. Consequently, the factual allegations in the Complaint do not state a claim against the defendants under the Louisiana Constitution, Article XII, § 3, and the defendants' motion as to that claim is GRANTED, but the Court grants leave to amend the Complaint to attempt to cure these defects.[10]

## K.  Leave to Amend and Rule 7(a) Reply

Barra requests leave to amend his complaint. [Doc. No. 27 at 27] Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case." *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013). One key exception to this generous standard is where the amendment would be futile. *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000). In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)." *Id.* In other

---

[10] Defendants argue that if all federal law claims are barred, this Court should decline to exercise supplemental jurisdiction over Barra's remaining state law claim, and alternatively that Barra does not state a claim under the Louisiana Constitution. As the Court will grant Barra leave to amend his Complaint, it will not decline supplemental jurisdiction over his state claims at this time.

words, if an amendment would be subject to the same grounds of dismissal as under a defendant's original Rule 12(b)(6) motion, amendment would be futile, and the court should deny leave to amend. Moreover, "courts should ordinarily grant a plaintiff at least one opportunity to amend before dismissing a complaint with prejudice for failure to state a claim." *Reed v. Gautreaux*, No. CV 19-130, 2019 WL 6219780, at *3 (M.D. La. Nov. 21, 2019) (citing *Matthews v. Stolier*, No. 13-6638, 2014 WL 5214738 at *12 (E.D. La. Oct. 14, 2014); *Hart v. Bayer Corp*., 199 F.3d 239, 247 n.6 (5th Cir. 2000)). While Barra has twice been granted leave to amend his Complaint, those amendments were solely for the purpose of naming the proper insurance provider as a party, and do not address the merits of any claim. [Docs. No. 7, 17] No answer has been filed by Defendants, nor has a scheduling order been issued. Consequently, at this time the Court finds that it would not be futile for Barra to amend his Complaint to address the pleading deficiencies noted above. Leave to replead or amend the Complaint is therefore GRANTED with respect to the following claims: (1) unlawful arrest; (2) unlawful seizure of property; (3) abuse of process; (4) malicious prosecution under federal law; (5) malicious prosecution under state law;[11] (6) retaliation for exercise of First Amendment rights; (7) individual capacity claims against Chief Boudreaux; (8) individual capacity claims against Mayor Ritter; (9) Barra's *Monell* claim against the City of Youngsville; and (1) Barra's claim under the Louisiana Constitution.

Any Amended Complaint shall be filed no later than thirty (30) days from the date of this ruling. Also, to the extent that Barra seeks to challenge the defendants' assertions of qualified immunity with facts in addition to the factual allegations of the Complaint, he must include a Rule 7(a) reply in the amended complaint. The Court denies leave to re-plead any other claim on the grounds that amendment would be futile.

---

[11] With respect to this claim, the Court grants leave to amend for the sole purpose of identifying this claim as a state-law claim for malicious prosecution and not a federal claim.

## IV.
### CONCLUSION

For the reasons set forth above, the defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 25] is GRANTED IN PART and DENIED IN PART.

Defendants' motion is GRANTED as to the following claims: unlawful arrest; unlawful seizure of property; abuse of process; malicious prosecution under federal law; retaliation for exercise of First Amendment rights; the individual capacity claims under section 1983; *Monell* liability against the City of Youngsville; and Barra's claim under the Louisiana Constitution. Leave to replead these claims is GRANTED, and an amended complaint shall be filed no later than thirty (30) days from the date of this ruling.

Defendants' motion is GRANTED and Barra's official capacity claims against Ritter, Boudreaux, and Merithew are DISMISSED WITH PREJUDICE.

Defendants' motion is DENIED as to qualified immunity for Officer Merithew's arrest of Barra and Barra's claim of malicious prosecution under Louisiana law. Any Rule 7(a) reply addressing qualified immunity shall be incorporated into an amended complaint addressing the pleading deficiencies noted above.

THUS DONE in Chambers on this 6th day of April, 2020.


**ROBERT R. SUMMERHAYS**
**UNITED STATES DISTRICT JUDGE**